[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both parties appeared. The plaintiff was represented by counsel. The defendant appeared pro se. All statutory stays having expired, the court has jurisdiction.
Having heard the evidence, the court finds as follows:
The defendant and the plaintiff, whose maiden name was Blackburn, intermarried at Orangeburg, South Carolina on March 25, 1980; that the plaintiff has resided continuously in Connecticut for a period of one year next preceding the date of the filing of this complaint; that there are five minor children issue of the marriage, Danielle LaSaie Thomas born February 28, 1986, Dimitri Ross Thomas born May 29, 1989, Darien Noel Thomas born July 10, 1992, Deaven Elizabeth Thomas born February 3, 1994 and Douglas Noble Thomas born August 13, 1995; that there were no other minor children born to the plaintiff since the date of the marriage of the parties; that the marriage has broken down irretrievably; that there is no hope of reconciliation and that the plaintiff had received aid from the State of Connecticut and is presently receiving benefits under Title 19 from the federal government. CT Page 9416
The wife had many surgeries which affected her ability to care for herself and her estate. Accordingly, the Probate Court for the district of New London appointed the wife's sister, Anita E. Harris, as conservator of the wife's estate and her person. Subsequently, said conservator was granted permission to be substituted as plaintiff in this matter.
At the trial, the wife testified. The court was of the opinion she was alert and oriented and competent to testify concerning her marriage.
The evidence was scant, at the least, as to the cause of the breakdown of the marriage. The wife suspected that the defendant was unfaithful to her with a co-employee of the defendant, named Sandy, but she had no proof of same. She testified that she moved out of the marital abode into a shelter because the defendant was not providing for their children and was not paying the family bills. She claimed that the children ate better at the shelter than they did at home.
The defendant testified that Sandy was merely a friend and that he had no intimate relations with her during the marriage. He did admit that although he became more involved with her after his wife left their marital abode, he did not have an intimate relationship with Sandy although he did admit he went to Florida with her at her expense after his wife left him.
From the evidence presented, it is clear that the marriage of the parties has broken down irretrievably with no hope for reconciliation and that both parties were equally responsible for the breakdown.
The wife, who was born July 21, 1960, is a high school graduate with three years of college-level education studying pre-law. She testified that she has a loss of short-term memory and still has many medical problems requiring continued medical treatment and rehabilitation. See Plaintiff's Exhibit C.
The wife's employment during the marriage was of a limited nature. Presently she is unemployed because of her medical and mental problems. Her potential for gainful employment seems limited at this time.
The wife receives an SSI monthly benefit of $565.00 per month. She is not entitled to any benefits for her children. See Plaintiff's Exhibit A.
The wife had been receiving Social Service benefits of $250.00 per week from the State of Connecticut. That benefit terminated in February 2002 CT Page 9417 and is presently under evaluation. No evidence was presented as to whether it will be reinstated.
The defendant, who was born March 9, 1960, has a high school education. He is presently employed as a supervisor at the Foxwoods Casino. His weekly net income is $536.11. He appears to be in good health except for an injury to his left wrist he incurred while employed at Pfizer's. In 1999 or 2000 he received $17,000.00 for said injury. He claims he used all of said money to pay family bills. Presently, the defendant is using an automobile owned by his sister. However, the defendant is making payments to his sister for the car. When all the necessary payments are made, she will give him title to the automobile. The wife does not have an automobile.
The parties have many debts and no assets. (See parties' financial affidavits on file.) The defendant's financial affidavit lists debts totaling $1,505.00. The wife's financial affidavit lists unreimbursed medical expenses she incurred totaling $1,400.25 and a loan from her mother of $14,500.00.
The wife's mother, testified that she loaned said amount to the parties between 1986 and 1995 and that she gave the defendant an itemized list of the money she gave to the parties. The defendant denies receiving said statement and denies owing his mother-in-law said amount. However, he does admit receiving $6,000.00 from her and that he is not making payments on said loan because he can't afford to since he supports his five children, who live with him, without any support from his wife.
The wife seeks to have the defendant provide her with Cobra insurance and to pay for same even though she does have medical coverage under her Title 19 coverage. However, she feels Cobra coverage would enable her to maintain her treatment with her present doctors which she will not be able to do under Title 19. The defendant claims his financial situation and his support of the five minor children prohibits this.
After considering the pertinent Connecticut General Statutes and in light of the evidence, judgment is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown. After also considering the wife's and defendant's proposed orders, it is ordered that;
1. Joint custody of the five minor children is awarded to the parties with primary custody to the defendant.
The wife shall have reasonable rights of visitation to include:
a. every Friday from 4:00 p.m. to 6:00 p.m., alternating the girls and CT Page 9418 boys.
b. The girls shall have a sleep over visitation with their mother once every eight weeks.
c. The boys shall have a sleep over visitation with their mother once every eight weeks.
d. Mother and father shall alternate all major holidays including Christmas, Christmas Eve, New Years, New Year's Eve, Easter, Memorial Day, Fourth of July and Labor Day. The children shall be with mother for Christmas 2002, every year on Mother's Day, on July 21st mother's birthday, and alternating birthdays of children.
e. Children shall be transported for their visitation with their mother by the defendant and returned to the defendant by the wife, her mother and/or her sister, Anita Harris.
f. All visitations shall be supervised or in the presence of the wife's mother and/or sister Anita Harris.
g. No visitation by the wife shall be withheld by the defendant as a means of punishing any child for any alleged or actual misbehavior.
2. No support payment by the wife to the defendant is ordered at this time because of the wife's financial and medical conditions.
3. The defendant is ordered to pay to the wife $1.00 per year alimony for a period of 11 years; the wife's remarriage or her death, whichever is the first to occur. Said alimony is modifiable to amount but not as to term. No alimony is awarded to the defendant.
4. The defendant is ordered to pay $800.00 towards his wife's unreimbursed medical expenses.
5. The defendant shall maintain health insurance coverage for the minors as is available through his employments. He shall pay for all uncovered and uninsured medical and health expenses while his wife is unemployed. When she becomes employed, the defendant shall be entitled to seek a modification of this provision.
6. The defendant shall provide the wife with Cobra insurance for so long as she is eligible. The wife shall pay the premium for said coverage.
7. The defendant shall be solely responsible for the debts listed on CT Page 9419 his financial affidavit. He shall hold his wife harmless on said debt.
8. No order is made concerning the indebtedness defendant may owe to Delphenia Blackburn, his mother-in-law. She can pursue other remedies available to her to collect said debt if she so chooses.
9. The defendant shall contribute $500.00 toward the wife's counsel fees.
JTR Vasington